Case 4:20-cv-03239   Document 33   Filed on 03/30/21 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
March 30, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE THE COMPLAINT & <br> PETITION OF CALLAN MARINE, <br> LTD. AS OWNER OF THE DREDGE <br> GENERAL PATTON, ITS ENGINES, <br> GEAR, TACKLE, ETC. IN A CAUSE <br> FOR EXONERATION FROM OR <br> LIMITATION OF LIABILITY | § <br> § <br> § <br> § CIVIL ACTION NO. 4:20-cv-03239 <br> § <br> § <br> § |

## ORDER AND OPINION

This is a maritime limitation of liability action filed under 46 U.S.C. § 30501 *et seq.* (the "Limitation Act" or "Act"), and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims. Pending before me is Claimants' Opposed Motion to Lift Stay/Dissolve the Limitation Injunction ("Motion to Lift Stay") filed by Claimants Jose Maldonado and Jesus Padron (collectively, "Claimants"). *See* Dkt. 24. For the reasons provided below, I **GRANT** the Motion to Lift Stay.

## BACKGROUND

Callan Marine, Ltd. ("Callan Marine") provides marine construction services along the Texas Gulf Coast. From February 14, 2020, through March 7, 2020, Callan Marine performed dredging operations at the GT Logistics Dock in Port Arthur, Texas. During the project, two workers were injured in separate incidents aboard one of Callan Marine's dredging vessels, the M/D General Patton (the "Vessel").

During the last week of February 2020, a pipe being moved by heavy equipment reportedly broke loose on the Vessel and struck Claimant Jesus Padron,

resulting in personal injuries. Around the same time, Claimant Jose Maldonado tripped and fell while walking across a large pump on the Vessel. He also allegedly suffered personal injuries.

Maldonado filed suit against Callan Marine in Texas state court on March 17, 2020. Padron filed suit against Callan Marine in state court on April 30, 2020. Claimants brought claims under the Jones Act, for general maritime negligence, and for unseaworthiness. Collectively, Claimants seek in excess of $5 million in damages from Callan Marine.

On September 17, 2020, Callan Marine filed this limitation of liability action. Callan timely filed a verified *Ad Interim Stipulation for Value* representing that its interest in the Vessel and its pending freight, if any, at the termination of the voyage was $5,963,000.00. With Callan Marine's stipulated valuation on file, I entered an order enjoining "any and all suits, actions, or legal proceedings of any nature wherever filed and by whoever made . . . in respect to any claim or demand against Callan Marine arising from" the dredging operation. Dkt. 16 at 2. That order stayed the state court proceedings brought by Claimants.

Claimants timely filed claims in this limitation proceeding. They then filed the pending Motion to Lift Stay along with several stipulations which they contend adequately protect Callan Marine's rights under the Limitation Act. Callan opposes the motion.

## LEGAL STANDARD

"A shipowner facing potential liability for a maritime accident may file suit in federal court seeking protection under the [Limitation] Act." *Complaint of Port Arthur Towing Co. on Behalf of M/V Miss Carolyn*, 42 F.3d 312, 315 (5th Cir. 1995). "The Limitation Act allows a shipowner, lacking privity or knowledge, to limit liability for damages arising from a maritime accident to the 'amount or value of the interest of such owner in such vessel, and her freight then pending.'" *Odeco Oil & Gas Co., Drilling Div. v. Bonnette*, 74 F.3d 671, 674 (5th Cir. 1996) (quoting 46 U.S.C.A. § 183(a)).[1]

When a shipowner files a complaint seeking to limit its liability under the Limitation Act, the federal district court "stays all related claims against the shipowner pending in any forum, and requires all claimants to timely assert their claims in the limitation court." *Magnolia Marine Transp. Co., v. Laplace Towing Corp.*, 964 F.2d 1571, 1575 (5th Cir. 1992). This consolidating procedure supports "the federal courts' exclusive jurisdiction" over limitation actions, *Port Arthur Towing Co.*, 42 F.3d at 315, "and ensures that the shipowner . . . is not held to liability in excess of the amount ultimately fixed in the limitation suit (the limitation fund)." *Magnolia Marine*, 964 F.2d at 1575. In cases filed under the Limitation Act, the "court's primary concern is to protect the shipowner's absolute

---

[1] This Limitation Act provision is now found at 46 U.S.C. § 30505: "Except as provided in section 30506 of this title, the liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight."

3

right to claim the [Limitation] Act's liability cap, and to reserve the adjudication of that right in the federal forum." *Id.*

"A shipowner's right to limitation, however, is cabined by the 'saving to suitors' clause," *Odeco Oil*, 74 F.3d at 674, which gives federal district courts exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction," but "sav[es] to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). "The saving to suitors clause evinces a preference for jury trials and common law remedies in the forum of the claimant's choice." *Odeco Oil*, 74 F.3d at 674. *See also In re the Complaint & Petition of RLB Contracting, Inc.*, No. H-15-54, 2016 WL 343988, at *1 (S.D. Tex. Jan. 28, 2016) ("The savings to suitors clause essentially provides claimants with the right to choose the forum in which they will bring their suit."). As the Supreme Court has recognized, there is a natural tension "between the saving to suitors clause and the Limitation Act." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 448 (2001). "[T]he former affords suitors a choice of remedies, while the latter gives shipowners the right to seek limitation of their liability exclusively in federal court." *In re Tetra Applied Techs. LP*, 362 F.3d 338, 340 (5th Cir. 2004).

The Fifth Circuit has identified two instances in which claims may proceed in state court outside the limitation action while protecting the shipowner's rights under the Limitation Act. *See id.* at 341. The first is when the claims "total less than the value of the vessel." *Id.* (quotation omitted). The second situation occurs when "the claimants stipulate that the federal court has exclusive jurisdiction over the

4

limitation of liability proceeding and that they will not seek to enforce a greater damage award until the limitation action has been heard by the federal court." *Id.* (quotation omitted). Accordingly, I should lift the stay and allow state court proceedings to move forward if Claimants file stipulations that adequately protect the shipowner's rights under the Limitation Act. *See Lewis*, 531 U.S. at 454.

## ANALYSIS

As part of their request to lift the stay of state court proceedings, Claimants each submitted multi-page stipulations patterned after those considered by the Fifth Circuit in *Tetra*. According to Claimants, because their stipulations are "virtually identical" to stipulations considered in *Tetra*, I am required to dissolve the limitation injunction. Dkt. 24 at 6. Callan Marine strongly disagrees, complaining that Claimants' stipulations do not mirror those the stipulations discussed in *Tetra*. More to the point, Callan Marine argues that Claimants' stipulations are insufficient in that they fail to protect Callan Marine's right to limitation. Claimants have since filed amended stipulations more closely resembling the stipulations approved by the Fifth Circuit. Ultimately, I must decide whether the amended stipulations adequately protect Callan Marine's rights under the Limitation Act.

In the amended stipulations, Claimants stipulate that Callan Marine "is entitled to and has the right to litigate all issues relating to limitation of liability under [the Limitation Act] in this Court pursuant to this Court's exclusive jurisdiction." Dkt. 31-1 at 1, 31-2 at 1. The amended stipulations also "waive any

5

claim of res judicata relevant to the issue of limitation of liability." *Id*. Claimants further stipulate that, in the event they are awarded more than the limitation fund, they will not "seek to enforce . . . excess judgments or recoveries insofar as [they] may expose [Callan Marine] to liability in excess of the proper limitation fund." *Id*. at 2. The amended stipulations also provide that the limitation fund will be distributed between Claimants on a pro rata basis. *See id*. Finally, Claimants agree that if Callan Marine "is held responsible for attorneys' fees and costs," the fees and costs will come out of the limitation fund and that Claimants' "recovery will be limited to [their] pro rata portion of the proper limitation fund, as reduced by the amounts of such attorneys' fees or costs." *Id*. In my view, these amended stipulations more than adequately protect Callan Marine's rights under the Limitation Act. *See In re Bouchard Transp. Co.*, No. 2:17-cv-363, 2018 WL 4290460, at *2 (S.D. Tex. Aug. 23, 2018).

Callan Marine argues that Claimants' stipulations are inadequate for several reasons. First, Callan Marine contends that "claimants must agree and stipulate 'as to the priority in which the claimants will receive satisfaction against the shipowner from the limited fund.'" Dkt. 27 at 7 (quoting *Magnolia Marine*, 964 F.2d at 1576). That is simply not the case. Callan Marine's quote from *Magnolia Marine* is decontextualized to the point of being fundamentally misleading. Here's the full quote:

> Multiple claimants *may* reduce their claims to the equivalent of a single claim by agreeing and stipulating as to the priority in which the claimants will receive satisfaction against the shipowner from the

6

> limited fund. Under such stipulations, the state court proceeding could have no possible effect on the shipowner's claim for limited liability in the admiralty court. In that circumstance, the provisions of the Act do not control.

*Magnolia Marine*, 964 F.2d at 1576 (cleaned up) (emphasis added). Callan Marine has not pointed to, and I have not found, a single Fifth Circuit case requiring multiple claimants to stipulate to an order of priority to the limited fund.

Far from requiring a stipulation as to priority among multiple claimants, the Fifth Circuit has squarely held that multiple claimants can stipulate to distribute "payment of claims on a pro rata basis," which "adequately prioritizes the claims," and "is sufficient to protect [the shipowner's] rights under the act." *In re Tidewater, Inc.*, 249 F.3d 342, 347 (5th Cir. 2001). *See also Bouchard*, 2018 WL 4290460, at *2 ("When there are multiple claimants, an additional stipulation stating claimants will share the limitation fund on a pro rata basis is necessary to protect petitioners' right under the Limitation Act."). Callan cites *RLB Contracting, Inc.*, as authority for its contention that "Claimants' stipulations are insufficient, as a matter of law." Dkt. 27 at 8. The court in *RLB Contracting* found stipulations inadequate in a multi-claimant situation because the claimants stipulated that "the fund should be distributed *both* on a pro rata basis and on a prioritized basis." 2016 WL 343988, at *4. The district court reasoned that these stipulations "potentially jeopardize[d] Petitioner's right to full protection of the Limitation Act" because claimants could not have possibly agreed to both a pro rata distribution and a priority for distribution as they are two mutually exclusive

7

methods of distributing a limited fund. *Id*. It wasn't that a pro rata distribution was inadequate or that a priority stipulation was required that threatened the shipowner's rights. Rather, it was the fact that the claimants had purportedly agreed to conflicting distribution plans. This conflict suggested to the district court that "further litigation" might arise because the claimants had not clearly agreed on how the funds would be distributed between them. *Id*. That's not the case here. Claimants have each stipulated solely to a pro rata distribution of the limited fund should it be required. Callan Marine has not indicated how this stipulation fails to protect its rights under the Limitation Act.

Callan Marine also argues that "inherent conflicts of interest weigh against dissolving the limitation injunction because Claimants possess competing claims." Dkt. 27 at 2. Again, Callan Marine cites *RLB Contracting* to support its position. According to Callan Marine, *RLB Contracting* stands for the proposition that a shipowner's rights under the Limitation Act are threatened when an attorney represents more than one claimant. Specifically, Callan Marine points to a footnote in which the court there noted that "[t]he inherent conflicts of interest confronted by [c]laimants' counsel also will need to be resolved." 2016 WL 343988, at *5 n.9. That language does not tell me anything about how an attorney's representation of more than one claimant purportedly impacts Callan Marine's rights under the Limitation Act, and Callan Marine has pointed to no other authority or argument to help fill in that gap. Further, no determination has been made regarding Callan

8

Marine's right to limit its liability at this stage, so "any conflict of interest at this stage is only hypothetical." *Bouchard*, 2018 WL 4290460, at *3.

\* \* \*

Claimants have stipulated that this Court is the sole forum for the adjudication of Callan Marine's rights to limitation, and that they will not enforce any award exceeding the ship's appraised amount as determined by this Court. These stipulations adequately protect Callan Marine's right to limited liability under the Limitation Act. I see no reason to deny Claimants the right to pursue relief for their injuries in the forum of their choice.

## CONCLUSION

For the reasons provided above, Claimants' Opposed Motion to Lift Stay/Dissolve the Limitation Injunction (Dkt. 24) is **GRANTED**.

SIGNED on this 30th day of March 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE